IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**HOWARD DAVID REINERT,**

      **Plaintiff,**

v.                                                                                    **No. CIV-14-0381 LAM**

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

      **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff's ***Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum*** *(Doc. 19)*, filed November 4, 2014 (hereinafter "motion").   On January 30, 2015, Defendant filed a response to the motion [*Doc. 24*], and, on February 14, 2015, Plaintiff filed a reply [*Doc. 25*].   In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case.   [*Docs. 4* and *8*].   The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law.   Additionally, the Court has meticulously reviewed and considered the entire administrative record.   [*Doc. 15*].   For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

# I.   Procedural History

On August 9, 2011, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB") alleging that he became disabled on May 30, 2011.  [*Doc. 15-8* at 2-5]. Plaintiff stated that he became disabled due to "Aortial dissection type a."  [*Doc. 15-9* at 6].   The application was denied at the initial level on October 6, 2011 (*see Doc. 15-6* at 2-5), and at the reconsideration level on January 20, 2012 (*id.* at 9-11).   Pursuant to Plaintiff's request (*id.* at 12-13), Administrative Law Judge Ben Willner (hereinafter "ALJ") conducted a hearing on October 23, 2012.  [*Doc. 15-4* at 2-39].   At the hearing, Plaintiff appeared, was represented by an attorney, and testified.  *Id.* at 4, 7-32.   In addition, Vocational Expert (hereinafter "VE") Diane Webber appeared and testified at the hearing.  *Id.* at 4, 28-29, 32-38.

On April 24, 2013, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 15-3* at 16-34].   Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 12), and, on February 28, 2014, the Appeals Council denied Plaintiff's request for review (*id.* at 4-9), which made the ALJ's decision the final decision of the Commissioner.   On April 24, 2014, Plaintiff filed his complaint in this case. [*Doc. 1*].

# II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).   If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.   *See Langley v. Barnhart*,

2

373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A);

20 C.F.R. § 404.1505(a).   In light of this definition for disability, a five-step sequential evaluation

process (SEP) has been established for evaluating a disability claim.   20 C.F.R. § 404.1520;

*Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first four steps of the SEP, the claimant has

the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and

(2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of

impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's

impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling

impairments; or (4) the claimant is unable to perform his "past relevant work."   20 C.F.R.

§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the

burden of proof shifts to the Commissioner to show that the claimant is able to perform other work

in the national economy, considering his residual functional capacity (hereinafter "RFC"), age,

education, and work experience.   *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on October 3, 1958.   [*Doc. 15-8* at 2].   Plaintiff has worked as an

appraiser, owner of a clothing store, radio announcer, researcher, and sales representative.

[*Doc. 15-9* at 7].   Plaintiff alleges that he is unable to work due to "aortial dissection type a."   *Id.*

at 6.   Plaintiff's medical records include: two Mental RFC Assessments, one by Renate Wewerka,

Ph.D., dated October 5, 2011 [*Doc. 15-5* at 10-12], and one by Keith Bauer, Ph.D., dated

December 20, 2011 (*id.* at 25-27); a Consultative Examination by Michael R. Pitts, Psy.D., dated

September 22, 2011 (*Doc. 15-13* at 22-24); medical records from Anthony H. Guck, PAC, MPH,

including a Medical Source Statement of Ability to do Work-Related Activities (Physical), dated

September 27, 2012 (*Doc. 15-19* at 2-35, and *Doc. 15-25* at 22-26); and a letter and medical

records from David J. Caparrelli, M.D. (*Doc. 15-26* at 44-45).   Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of May 30, 2011.   [*Doc. 15-3* at 18].   At step two, the ALJ found that Plaintiff has the following severe impairments: status post aortic aneurysm and repair; obesity; headaches; hypertension; diverticulosis; an affective disorder; and an anxiety disorder.   *Id.*   At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).   *Id.*

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except: "he can only occasionally climb ladders, ropes, and scaffolds; he must avoid concentrated exposure to extreme heat and cold; he must avoid concentrated exposure to vibration; he must avoid concentrated exposure to hazards such as unprotected heights; he is limited to work involving detailed, but not complex, tasks and instructions; and he is able to maintain concentration, persistence, and pace for two hour periods before taking a break."   *Id.* at 20-21.   In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."   *Id.* The ALJ stated that he gave little weight to the opinion of Mr. Guck because he is not an acceptable medical source and "his opinion is somewhat contradicted by his own treating records." *Id.* at 26.   The ALJ gave significant weight to the opinions of Dr. Pitts, the state agency medical

consultant, and the state agency psychological consultants.   *Id.*   In addition, the ALJ gave "some weight" to the observations of the field office representative who assisted Plaintiff with filing his application, and little weight to the observations of Plaintiff's friend, Bruce Davis, in the Third Party Function Reports he completed.   *Id.* at 26-27.   At step four, the ALJ found that Plaintiff is unable to perform any of his past relevant work, so the ALJ proceeded to the fifth step.   *Id.* at 27.

At the fifth and final step, the ALJ noted that Plaintiff was born on October 3, 1958, so he was 52 years old on the alleged disability onset date, which is defined as an individual closely approaching advanced age.   *Id.*   The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English.   *Id.*   The ALJ stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."   *Id.* (citing Soc. Sec. Rep. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).   The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.   *Id.* The ALJ stated that he asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as a ticket taker, counter clerk/photo department, and small products assembler.   *Id.* at 28.   The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles."   *Id.*   The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act.   *Id.*

# V.   Analysis

In his motion to reverse or remand, Plaintiff contends that the ALJ erred in his RFC assessment by failing to properly consider the opinion of Mr. Guck (*Doc. 19* at 4-11), and erred at step five by failing to properly consider Plaintiff's age (*id.* at 11-13).   In response, Defendant contends that the ALJ properly considered Mr. Guck's opinion and properly considered Plaintiff's age.   [*Doc. 24* at 7-11].

Plaintiff first contends that the ALJ erred by giving Mr. Guck's opinion little weight because Mr. Guck is not considered an acceptable medical source and his opinion is somewhat contradicted by his own treating records.   [*Doc. 19* at 9] (citing *Doc. 15-3* at 26).   Plaintiff contends that the only example of Mr. Guck's treatment records that might contradict his opinion is that Plaintiff's depression appeared to be more like dysthymia.[1]   *Id.*   Plaintiff contends that the ALJ erred by failing to consider the frequency and length of time Mr. Guck had been treating Plaintiff, and that Dr. Caparrelli's opinion supported Mr. Guck's opinions.   *Id.* at 10-11.   In response, Defendant states that the ALJ properly considered Mr. Guck's opinions, and that Mr. Guck's opinions are inconsistent with the opinions of Dr. Pitts and the state agency physicians and psychologists.   [*Doc. 24* at 8].

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. § 404.1545(a)(1); *see also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations.").   The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of

---

[1]   Dysthymia is defined as "[a] chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness."   *Stedman's Medical Dictionary* (27th ed., Lippincott Williams & Wilkins 2000) at 556.

treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.   Soc. Sec. Rep. 96-8p at \*5.   "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."   *Id.* at \*7.   The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions.   *Id.* Because the ALJ must consider the whole record, he is prohibited from picking and choosing "among medical reports, using portions of evidence favorable to his position while ignoring other evidence."   *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted).

Here, Mr. Guck opined that Plaintiff was unable to return to work because of his depression, PTSD, and inability to focus.   [*Doc. 15-19* at 7, 13, 23, 28, and 35].   The ALJ stated that he gave this opinion little weight because Mr. Guck is a physician's assistant and is, therefore, not considered an acceptable medical source, and because Mr. Guck's "opinion is somewhat contradicted by his own treating records," such as a February 2012 treatment record stating that Plaintiff's depression is more like dysthymia, a condition with symptoms not as severe as with a major depressive disorder.   [*Doc. 15-3* at 26]; *see also* [*Doc. 15-19* at 2-3] (Mr. Guck's February 2012 treatment record).   However, the ALJ failed to note that, despite this one record from February 2012, the treatment records from Mr. Guck include assessments of depression and anxiety that support his opinion regarding Plaintiff's inability to return to work.   *Compare* [*Doc. 15-19* at 3] (note that Plaintiff's depression is "[m]orelike a dysthymia") *with, e.g., id.* at 19

and 25 (notes assessing Plaintiff with depression and anxiety).   The ALJ should have explained

why he rejected these assessments.   Importantly, Mr. Guck also wrote a letter on October 1, 2012

-- <u>after</u> the February 2012 treatment note -- stating that Plaintiff had been diagnosed in October of

2011 with major depressive disorder and anxiety disorder, and that nothing had changed over the

past year "except that [Plaintiff] is perhaps more deeply depressed."   [*Doc. 15-25* at 26].   The

ALJ's failure to explain why he chose to rely on some findings by Mr. Guck and not on others is

legal error.   *See* Soc. Sec. Rep. 96-8p at *7 (The ALJ "must also explain how any material

inconsistencies or ambiguities in the evidence in the case record were considered and resolved");

*see also Carpenter*, 537 F.3d at 1265 (An ALJ may not "pick and choose among medical reports,

using portions of evidence favorable to his position while ignoring other evidence.").

In addition, the ALJ's rejection of Mr. Guck's opinions because he is not an acceptable

medical source is not properly supported.   Pursuant to Soc. Sec. Rep. 06-03p, 2006 WL 2329939,

at *4-5, ALJs must consider the following factors, when relevant, in evaluating medical sources

who are not "acceptable medical sources:"

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

The ALJ failed to state whether he considered any of these factors, other than noting the

inconsistent treatment note from February 2012.   The Court finds that the ALJ's failure to do so is

legal error, especially when the record contains evidence supporting Mr. Guck's opinion regarding

Plaintiff's inability to return to work because of his depression.   *See, e.g.*, [*Doc. 15-13* at 23-24]

9

(Dr. Pitts' diagnoses of major depressive disorder and anxiety disorder, and opinion that Plaintiff's persistence is reduced by fatigue and depression); [*Doc. 15-5* at 10-11 and 26-27] (state agency physicians' findings that Plaintiff is limited in sustained concentration and persistence, ability to carry out detailed instructions, social interactions, adaptation, ability to respond appropriately to changes in the work setting, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and ability to perform at a consistent pace without an unreasonable number and length of rest periods); and [*Doc. 15-26* at 44] (Dr. Caparrelli's opinion that Plaintiff should not be placed in a stressful environment). Therefore, the Court finds that the ALJ erred in his consideration of Mr. Guck's opinions and, on remand, shall consider his opinions in accordance with Soc. Sec. Rep. 96-8p and Soc. Sec. Rep. 06-03p.

Because the Court finds that Plaintiff's case should be remanded for further consideration of the evidence supporting Mr. Guck's opinions, the Court finds that it is unnecessary to reach Plaintiff's remaining claim that the ALJ erred by failing to properly consider Plaintiff's age, because that claim may be affected by the ALJ's findings on remand. *See Robinson*, 366 F.3d 1078, 1085 (10th Cir. 2004) (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the vocational expert's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the evidence supporting Mr. Guck's opinions, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's *Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum (Doc. 19)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.   A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**